IN THE MATTER OF THE PETITION OF THE TRUSTEES OF THE IN-
CORPORATED VILLAGE OF WESTMINSTER, BOSTON & MAINE
RAILROAD AND BOSTON AND MAINE TRANSPORTATION
CO., APPELLANTS.

May Term, 1936.

Present: POWERS, C. J., SLACK, MOULTON, THOMPSON and
SHERBURNE, JJ.

Opinion filed October 6, 1936.

*Holmer L. Skeels* for the appellants.

*Ernest W. Gibson, Jr.*, for the appellees.

MOULTON, J. The Bee Line, Inc., is an interstate carrier of passengers, operating an automobile bus service from White River Junction, Vermont, to points in Massachusetts. Southerly from Bellows Falls it passes through the villages of Westminster, Putney, and Brattleboro. Having no certificate to do an intrastate business it has had no right to carry passengers between these points, although it has been enabled to transport persons from any one of them to Massachusetts or back again. Its route parallels the Boston and Maine Railroad, which does both interstate and intrastate business, and has stations in the several villages above mentioned.

The trustees of the incorporated village of Westminster brought this petition to the public service commission under the provisions of P. L. 6115 to require the Bee Line to render intrastate service between Bellows Falls and Westminster, and between Westminster, Putney, and Brattleboro. The Bee Line appeared and professed itself willing to do so, and to arrange its schedule so as to suit the convenience of the different communities with regard to the transportation of the school children hereinafter mentioned. The Boston and Maine Railroad and the Boston and Maine Transportation Company appeared and moved to dismiss the petition for certain jurisdictional reasons,

but the motion was denied. After hearing and the filing of a finding of facts, the order was made and the two last mentioned companies have appealed, and have filed a bill of exceptions.

An analysis of the motion to dismiss as made before the commission shows that its jurisdiction was challenged for the following reasons: (1) Because the Bee Line, Inc., is exclusively engaged in interstate transportation, there is no power to grant the order sought; (2) because the situation does not come within the provisions of P. L. 6115 which permits such an order to be made only when the common carrier "is furnishing service" within the town, city, or village which brings the petition, or between that municipality and another within the State, the service thus referred to being claimed to mean intrastate transportation only.

 1. A state may not, in any form or in any guise, directly burden the prosecution of interstate business. *Baldwin* v. *Seelig, Inc.*, 294 U. S. 511, 522, 79 L. ed. 1032, 55 Sup. Ct. 497, 500, 101 A. L. R. 55, and cases cited. But this does not mean that no state action may be taken with reference to those so engaged. "The paramount authority of Congress over the whole subject of interstate commerce is, of course, admitted. But it is not everything that affects that commerce that burdens it * * * The provision of the Federal Constitution covering the subject is not self-executing and therefore there are incidental matters connected with it over which the states have a measure of authority until and unless Congress takes action thereon. The rule is that when the subject in hand is local and limited in character and operation, the State may legislate thereon until Congress assumes control over it. But when it is national in character, requiring uniformity throughout the country, the power of Congress is exclusive * * * But even this much power over the subject left to the State must be so exercised as not unreasonably to affect interstate traffic." *State* v. *Caplan*, 100 Vt. 140, 156, 135 Atl. 705, 711, and cases cited. So, in the interests of the public safety and welfare, a state may regulate motor vehicles using its highways even though engaged in interstate transportation, for the commerce clause of the federal Constitution (art. 1, § 8, cl. 3) is not a limitation upon the proper and reasonable exercise of the police power abiding in the state. *State* v. *Caplan, supra. Interstate Busses Corp.* v. *Holyoke St. Ry. Co.*, 273 U. S. 45, 52, 71 L. ed. 530, 47 Sup. Ct. 298, 300. In

any event, the reasonableness of the regulation is a judicial question, *Norfolk and W. Ry. Co.* v. *Public Service Comm.*, 265 U. S. 70, 74, 68 L. ed. 904, 44 Sup. Ct. 439, 440, and the burden is upon the objecting party to show it operates to prejudice interstate transportation. *Interstate Busses Corp.* v. *Holyoke St. Ry. Co., supra,* at page 51, 273 U. S., at page 299, 47 Sup. Ct. Without entering upon an extended discussion of the many and various regulations which have been held to be reasonable, it may be noted that a state may require an interstate carrier of passengers to obtain a license or certificate before engaging in intrastate business, and may prohibit it from doing so until such license or certificate has been obtained. *Interstate Busses Corp.* v. *Holyoke St. Ry. Co., supra; Railway Express Agency* v. *Comm. of Virginia,* 282 U. S. 440, 444, 75 L. ed. 450, 51 Sup. Ct. 201, 72 A. L. R. 102; *Haselton* v. *Interstate Stage Lines,* 82 N. II. 327, 133 Atl. 451, 458, 47 A. L. R. 218; *Barrows* v. *Farnum's Stake Lines,* 254 Mass. 240, 150 N. E. 206. In the last case it is said that "The deprivation of the potential profit which might be derived from conducting intrastate carriage as an incident to the defendant's interstate business is not an interference with interstate commerce which infringes the commerce clause." If, therefore, a state may forbid an interstate carrier to conduct such intrastate business, it may grant permission to it to do so. Whether an interstate carrier may be compelled, against its will, to render the service, we need not consider, because in this proceeding the Bee Line has expressed its willingness to comply with the prayer of the petition, and by so doing has in effect joined in it. There is nothing in the record to show that the interstate transportation carried on by the Bee Line, or by the appellants, will be burdened by the carriage of intrastate passengers between the villages in question, no evidence having been introduced upon this point by any party. It appears, therefore, that the public service commission was not without jurisdiction for the first reason alleged in the motion to dismiss.

2. The fact that P. L. 6115 authorizes a petition only when the carrier "is furnishing service" within the town does not import the imposition of an unconstitutional interference with interstate commerce. Such a construction must be avoided, if possible (*State* v. *Clement Nat. Bank*, 84 Vt. 167, 199, 200, 78 Atl. 944, Ann. Cas. 1912D, 22), and it can be easily done in

this instance, for the statute must be taken to authorize not only control over carriers doing an intrastate business, but also the imposition of reasonable and unburdensome regulations upon those engaged in interstate transportation. The fact, therefore, that a carrier is furnishing service of the latter nature only does not of itself remove it from the jurisdiction of the public service commission as given by the statute. The only question is whether the control so exercised results in a direct burden upon interstate traffic, for a statutory provision not objectionable on its face may become unconstitutional because of its effect in operation. *State* v. *Clement Nat. Bank, supra,* at page 188. This, however, is a question of fact, and so not for our consideration in passing upon the merits of the present motion.

It follows that the motion to dismiss was properly denied.

Several witnesses were permitted to testify that in their opinion, based upon what they had heard people say, it was the general desire in Westminster and Putney that local service should be rendered by the Bee Line. This evidence was received subject to objection and exception by the appellants upon the ground of hearsay. That it is such is clear, and is not denied by the petitioners, but the ruling is claimed to be justified by what is said in *In re New England Power Company,* 103 Vt. 453, 459, 156 Atl. 390, 392, that while the public service commission "cannot dispense with those fundamental rules of evidence that are essential to a fair and impartial trial of the questions before it, yet from the purposes of its creation and the nature of its functions it is necessarily endowed with a liberal discretion in passing upon the competency of tendered evidence * * *. Consequently the admission by it of incompetent evidence is not necessarily reversible error." That decision concerned the admission of an exhibit embodying a survey and valuation of the assets of a corporation, which was based in part upon the work of certain employees of the firm of accountants of which the witness producing it was a member, according to a plan laid down by the witness, and it appeared that the work had been inspected and checked by the witness, who was present during its progress and had opportunity to become somewhat acquainted with it. As a matter of expediency it was within the power of the commission to dispense with the testimony of the employees who

actually did the work and compiled the survey. See *Squires* v.
*O'Connell*, 91 Vt. 35, 39, 99 Atl. 268.

While it is true that the inquiry of the commission
"should not be too narrowly constrained by technical rules as
to the admissibility of proof" (*Interstate Commerce Commission* v. *Baird*, 194 U. S. 25, 44, 48 L. ed. 860, 869, 24 Sup. Ct.
563, 569), its discretion in the reception of evidence has limits
which have been exceeded by the ruling in the instant case.
The value of the challenged evidence depended not upon the
credit of the witnesses who testified, but upon that of the persons
upon whose words they had formed the opinions they expressed,
who were not on oath before the commission, and were not subject to the test of cross-examination, which is the determinative
reason for the rule that excludes hearsay. 1 Greenleaf on Evidence (16th ed.), pars. 98, 99, pp. 182-185. The ruling of the
commission violated a fundamental principle of evidence which
was essential to a fair and impartial trial, and requires a reversal.

It is unnecessary to consider the other questions raised.

*Order reversed and cause remanded. Let the result be certified to the public service commission.*