## State of Vermont v. Herbert E. Ovitt

[ 229 A.2d 237 ]

February Term, 1967

Present: Holden, C.J., Shangraw, Barney, Smith and Keyser, JJ.

Opinion Filed April 4, 1967

*Chester S. Ketcham,* Special Counsel for Attorney General, for the State.

*Herbert E. Ovitt, pro se.*

**Shangraw, J.** On May 20, 1964 trial was commenced in the Essex County Court on an information issued by the Deputy Attorney General of the State of Vermont. Count 1 charged the respondent with the crime of rape and Count 2 charged the respondent with assault with the intent to commit rape. On May 26, 1964 the jury rendered a verdict of guilty on each count.

Following a pre-sentence investigation, the respondent was returned to court on July 14, 1964. At that time a motion by the State to set aside the verdict on Count 2 was granted. The respondent was then sentenced to a term of not less than five years nor more than ten years at the Vermont State prison on the rape conviction. The respondent has appealed.

The respondent argued his case before this Court. An experienced and competent attorney counseled with him during the course of his argument.

The information was filed by Deputy Attorney General "on his oath of office" in conformity with 13 V.S.A. §5652 and related sections 3 V.S.A. §§152 and 153.

[█ Respondent's first contention is that the information is faulty because it was not supported by an affidavit showing personal knowledge and probable cause as determined by a magistrate, and therefore unconstitutional as being in violation of the Fifth and Fourteenth Amendments to the United States Constitution, and Article 10th of the Vermont Constitution.

This issue was fully explored and resolved against the respondent by *State* v. *Barr,* 126 Vt. 112, 223 A.2d 462, and *In re Davis,* 126 Vt. 142, 224 A.2d 905. Also, see *In re Winston Morris,* 126 Vt. 297, 229 A.2d 244. Therefore, further comment on this point is unnecessary.

The respondent claims prejudicial error in portions of the general charge, and additional instructions, given to the jurors at the open-

ing of the term of court. This relates to the following excerpts therefrom.

> "You may not be aware of it but, at this time you are about to participate in what is known as the law enforcement functions of the County of Essex."
>
> ". . . it will be a rewarding experience to you as your part in law enforcement in this County."
>
> "It has been called to my attention that I was slightly misleading in one of my general instructions; that is, I may have created the impression that you are law enforcement officers in your functions as jurors. In the sense you are not carrying badges or making arrests, your functions as jurors is for the purpose of trying the facts and applying the law as the Court directs you, when you deliberate. In the ordinary sense of being law enforcement officers, you are not. This is a unique function you have in the community."

Counsel for the respondent was present at the time and duly excepted to the foregoing as being prejudicial to the respondent. Upon arraignment of respondent May 20, 1964, and prior to the drawing of a jury, respondent again challenged the general array for reasons above stated.

After the jury was empaneled respondent again reiterated his challenge to the general array for reasons above stated, and moved that the question at issue be passed to the Supreme Court before final judgment in accordance with §2386 of Title 12 V.S.A. The motion was denied. This was a discretionary ruling and no error appears. *John* v. *Fernandez*, 124 Vt. 346, 205 A.2d 552.

The case proceeded to trial and following the conclusion of the evidence, the presiding judge in his charge made the following comments on the phase of the case now being considered.

> "You, as members of the jury in this case, are not law enforcement officials. Your sole role in this trial is to determine the facts from the evidence introduced in Court in accordance with the Law as given to you by the Court."

Later, in the charge to the jury, we find this comment, ". . . it is your sole province to determine the facts in the case."

It must be conceded that the initial charge to the general panel of jurors was erroneous, and even as supplemented left much to be desired. The jury which tried the case lived with these instructions from May 20, 1964 until May 26, 1964. During that period they may well have considered themselves as members of the prosecuting team.

Notwithstanding the attempted clarification of their duties as defined in the charge to the jury given at the conclusion of the evidence, an erroneous impression of their function may have been sufficiently deep-seated as to have resulted in a misguided and confused impression of their province. Whether or not the erroneous instructions concerning their functions as law enforcement officers had been dismissed from the minds of the jury at the time of their final deliberation in the case is debatable and subject to conjecture.

During the trial, but not in the course of the jury's deliberations, they were allowed to have cocktails or beer with their meals, costing $34.71, which was paid for by the officers in charge of the jury. The respondent urges, by this misconduct, that he was denied due process of law within the meaning of the Fifth and Fourteenth Amendments of the United States Constitution.

A jury is an integral part of the court for the administration of justice and on elementary principles its verdict must be obedient to the court's charge, based solely on legal evidence produced before it and entirely free from the taint of extraneous considerations and influences. The test is not whether the irregular matter actually influenced the result, but whether it had the capacity of doing so. The stringency of this rule is grounded upon the necessity of keeping the administration of justice pure and free from all suspicion of corrupting practices. It is said to be "imperatively required to secure verdicts based on proofs taken openly at the trial free from all danger of extraneous influences." *Panko* v. *Flintkote Co.*, 7 N.J. 55, 80 A.2d 302.

As stated in *State* v. *Brisson,* 124 Vt. 211, 214, 215, 201 A.2d 881, ". . . in criminal cases trial by jury is a constitutionally protected right. Vt. Const. Ch. I, Art. 10. Due process is involved and the law is sensitive to any infringement or impairment. . . . When dealing with the integrity of the jury a person has only to show the existence of circumstances capable of prejudicing the deliberate function of the jury. He is not required to prove that they actually did

so." Citing *Bellows Falls* v. *State Highway Board,* 123 Vt. 408, 414, 190 A.2d 695.

■ As a general rule, it is improper for the jurors to be furnished with, or to indulge in the use of intoxicating liquors during the trial, although it does not of itself vitiate the verdict where no injury or prejudice to accused has resulted therefrom, 23A, C.J.S. Criminal Law, §1363. On this subject see *Kealoha* v. *Tanka,* 370 P.2d 468; *Jones* v. *People,* 6 Colo. 452; *Reed* v. *Chicago B & OR Co.,* 151 N.W. 936; *WiBaux Realty Co.* v. *Northern Pac. Ry. Co.,* 54 P.2, 1175.

■ We cannot stop at this point. The parties in their briefs have labeled the use of intoxicating liquor as misconduct on the part of the jurors. More appropriately, here we have misconduct on the part of the officers in charge by furnishing and paying for the intoxicating liquor. Coupled with the contradictory and confusing instructions given by the trial court as to the role of jurors, the foregoing incident presented circumstances capable of influencing the jurors favorable to the State, and thereby capable of prejudicing the deliberative function of the jury. The verdict is tainted with suspicion. See 12 V.S.A. §1947.

At time of the alleged crime of rape the complainant, Juliette Poulin of Columbia, N.H., referred to in the transcript as Julie, was 18 years of age and the respondent of Charleston, Vermont, a married man, 28 years old.

The unchallenged evidence reveals that on Saturday evening, July 6, 1963, the complainant, respondent, Gordon House, Cecil R. O'Keefe, and Donald C. Bailey started out in an automobile operated by Mr. Bailey. During the evening the parties went to several places in New Hampshire and Vermont.

Viewing the evidence in the light most favorable to the State, during the early morning of July 7, 1963, complainant and respondent separated from their companions. Respondent procured an automobile at his home and with complainant finally proceeded to Wenlock, Town of Charleston, Vermont. They arrived there after five o'clock in the morning, at which place the respondent, without complainant's consent, had intercourse with her.

Complainant was then taken by respondent to the residence of a girl friend, Sharon Ball, who resided with her mother, Mrs. Geraldine Ball, in North Stratford, N.H. Complainant arrived at the Ball residence about six o'clock in the morning.

During the course of the trial the respondent objected to and saved exceptions to the admission and exclusion of certain evidence and by reason thereof claims prejudicial error. We now refer to such evidence.

On July 9, 1963 Mr. Houle gave officer Calvin G. Stebbins, a trooper employed by the Department of Public Safety, State of Vermont, a statement which in part contained the following: "I heard that Ovitt gave Julie a hard time." When offered in evidence and received, respondent objected to the foregoing portion of the statement as hearsay. Hearsay accusations or implications against an accused are not admissible unless admitted or adopted by him. *Pinkard* v. *United States,* 240 F.2d 632.

Such evidence should be excluded because its value depends not upon the credit of the witness who testifies, but upon that of persons who are not on oath before the court or other tribunal and not subject to the test of cross-examination. Here, its admission violated a fundamental principle of evidence which was essential to a fair and impartial trial. *In re Petition of Trustees of Westminister,* 108 Vt. 352, 359, 187 Atl. 519.

The complainant was employed by Plywood Products, Divisions of Brown Company, at North Stratford, N.H. Peter Castonguay was also employed by this company. On cross-examination of complainant she was asked the following:

Q. Did you tell Peter Castonguay that you thought you could get about $2,000 out of Mr. Ovitt?

Mr. Castonguay was called as a defense witness and the following inquiry followed.

Q. On one occasion Juliette was with you and did she say something to you about getting something out of Mr. Ovitt?

Objection was made by the State to each of the foregoing questions. The trial court sustained the objections to these inquiries. Respondent objected to the exclusion of this evidence.

By the above examination the respondent sought an affirmative answer to each of the questions as bearing on complainant's interest in the result of the prosecution, the weight to be given her testimony, and the credibility of this witness. The weight of her testimony and credibility were factors for the jury to determine. *Smith*

v. *Blow & Cote, Inc.*, 124 Vt. 64, 66, 196 A.2d 489. The exclusion of this evidence was error.

Mrs. Regina Ovitt, wife of the respondent, was called as a defense witness, and on direct examination was inquired of as to the time the respondent returned Sunday morning, July 7th. The witness testified that he returned about four o'clock. On objection by the State, this answer was struck from the record, on the basis that it constituted evidence of an alibi, and therefore inadmissible. This ruling was made on the basis that the respondent had failed to give the prosecuting attorney a notice of his intention to offer in his defense testimony to establish an alibi at least forty-eight hours before trial as required under the provisions of 13 V.S.A. §6561.

Respondent urged its admissibility by stating:

"This is not evidence concerning an alibi. It is evidence in defense of all the evidence that has already been admitted here as to whether this Respondent went certain places and came home a certain time. The answer I expect here is that she will tell what time the respondent arrived back home. * * * The Respondent has a Constitutional right to be heard in the Court by his witnesses and make a defense. This is not evidence of an alibi and it is not necessary to give notice that this type evidence was to be presented in this Court. The exclusion of this evidence is a denial of the Respondent's Constitutional rights, both the State of Vermont Constitution and the United States Constitution."

By an alibi the accused attempts to prove that he was at a place so distant from the scene of the offense that his participation in the crime was impossible. In other words, an accused undertakes to show that because he was not at the scene of the crime at the time of its commission, having been at another place at the time, he could not have committed the crime. 21 Am. Jur. 2d Criminal Law, §136.

Alibi statutes are generally held to be constitutional. This court has so held. *State* v. *Rickert,* 124 Vt. 380, 385, 205 A.2d 547. But being in derogation of the common law, they must be strictly construed. 21 Am. Jur. 2d. Criminal Law, §137.

The rejected line of inquiry was offered to rebut the evidence of the State, more particularly that of the complainant.

The information alleged no time on July 7, 1963, or particular place in the Town of Charleston where the offense occurred. Re-

spondent was not in a position before trial to anticipate the State's proof as to what hour, or particular place in Charleston the alleged offense was committed.

Complainant testified that the crime of which respondent stands convicted occurred in the Town of Charleston between the hours of five and six o'clock in the morning.

The exact time of the alleged offense, whether before four o'clock or between five and six o'clock in the morning of July 7, 1963 is not of the essence of the offense. Neither is the exact place in Charleston where it occurred. This is not a case where the State's evidence required proof of a particular hour, or place in Charleston, to sustain a conviction.

■ We do not conceive it to have been the intent of the legislature that §6561, *supra,* is applicable under the facts in this case. We so hold. The exclusion of Mrs. Ovitt's testimony, above referred to, was error.

■ Considering the combined effect of the errors and irregularities which we have pointed out, convinces us that the rights of the respondent have been impaired to his legal detriment. *Knight* v. *Willey,* 120 Vt. 256, 264, 138 A.2d 596, citing *Wilson* v. *Dyer,* 116 Vt. 342, 346, 75 A.2d 677 and *State* v. *Fairbanks,* 101 Vt. 30, 34, 139 Atl. 918. A new trial is required.

At the conclusion of the evidence respondent moved for a directed verdict of not guilty on Count 1. Without going into particulars the record demonstrates that his motion was properly denied.

Several other assignments of claimed error have been briefed by the parties. These need not be considered in view of our disposition of the appeal in this case.

*Judgment reversed and the cause remanded for a new trial.*